Nicola S. Yousif (BBO #679545)
Matthew McKenna (BBO #705644)
Shield Law, LLC
157 Belmont St.
Brockton, MA 02301
Phone: 508-588-7300
E:nick@shieldlaw.com
E:matt@shieldlaw.com

Attorneys for Plaintiff,
Allen Ryone and Amie Ryone

**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| Allen Ryone and Amie Ryone, Individually and On Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>Cenlar FSB and LoanCare LLC.,<br><br>Defendant | Case No.:<br><br>**[Class Action]**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2601, ET SEQ.**<br><br>**Jury Trial Demanded** |

**Introduction**

1. Allen Ryone ("Plaintiff Allen") and Amie Ryone ("Plaintiff Amie"), (or jointly referred to as "Plaintiffs") bring this Class action complaint on behalf of themselves, individually, and all others similarly situated, by and through their attorneys, against Defendants Cenlar FSB ("Defendant Cenlar") and LoanCare, LLC ("Defendant LoanCare") (together referred to as "Defendants") and alleges upon information and belief as follows:

2.  Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

3.  As detailed further below, Plaintiffs allege that Defendants failed to conduct a "reasonable investigation" of Plaintiffs' account and also failed to provide Plaintiffs with a complete record of Plaintiffs' file in response to a qualified written request, in violation of the Real Estate Settlement Procedures Act.

4.  While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety.

5.  Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants.

6.  Congress found "that significant reforms in the real estate settlement process are needed to ensure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C.§ 2601.

7.  To address this finding, Congress passed the Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et. seq., ("RESPA") in 1974.

8.  The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency authorized by Congress to supervise and enforce compliance of RESPA. 12 U.S.C. § 2617(a).

9.  The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA's implementing regulation. 12 U.S.C.§ 2617.

10. Under RESPA and Regulation X, loan servicers, including Defendants, must provide borrowers with specific account information available to them in the regular course of business upon receiving a Qualified Written Request ("QWR") or a Request for Information ("RFI") from the borrower. 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R §§ 1024.35(a).

11. A servicer must respond within 30 days to a QWR for information or an RFI in one of two ways: (1) provide the requested information, or (2) conduct a "reasonable search" for the requested information and provide the borrower with written notification explaining the basis for the servicer's determination that the requested information is "not available." 12 C.F.R. § 1024.35(d)(1)(i) – (ii).

12. In its official commentary to Regulation X, the CFPB outlines what constitutes "not available." Information is "not available" if: "[(1.)] The information is not in the servicer's control or possession, or [(2.)] The information cannot be retrieved in the ordinary course of business through reasonable efforts." 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

13. As an example of "available" information, the CFPB provides the following in its official commentary to Regulation X:

> A borrower requests a copy of a telephonic communication with a servicer. The servicer's personnel have access in the ordinary course of business to audio recording files with organized recordings or transcripts of borrower telephone calls and an identify the communication referred to by the borrower through reasonable business efforts. The information requested by the borrower is **available to the servicer.** 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii) (bold face added).

14. Defendants have failed to fulfill their duty to provide information available to it in the regular course of business to Plaintiffs upon receipt of Plaintiffs' QWR and RFI.

3

15. As alleged in greater detail below, Defendants have demonstrated a "pattern or practice" of failing to adequately respond to borrowers' requests for account information, which makes Defendants liable for statutory damages in an amount up to $2,000 for each failure to adequately respond. 12 U.S.C § 2605(f).

16. Notwithstanding this glaring failure to abide by its statutory duty, and despite Plaintiffs informing Defendants of their failure, Defendants continue to incorrectly state that the recordings are "privileged or proprietary."

## Jurisdiction and Venue

17. This court has subject matter jurisdiction over this action under 28 U.S.C 1331 because the action arises out of violations of RESPA, a federal law.

18. This Court has personal jurisdiction over Defendants because Defendants conduct business in Massachusetts and maintain significant contacts within the state and this federal district.

19. Venue is appropriate in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiffs reside in Brewster, Barnstable County, Massachusetts which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all relevant times.

## Parties

20. At all relevant times, Plaintiff Allen is a resident and citizen of Barnstable County, in the State of Massachusetts.

21. At all relevant times, Plaintiff Amie is a resident and citizen of Barnstable County, in the State of Massachusetts.

22. On information and belief, Defendant Cenlar has a headquarter and/or principle place of business located in Ewing, New Jersey.

23. On information and belief, Defendant LoanCare has a headquarter and/or

principle place of business in Virginia Beach, Virginia.

**Factual Allegations**

24. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as if fully stated herein.

25. Defendants serviced Plaintiffs' mortgage loan for a residence located in Barnstable, Massachusetts.

26. On April 1, 2019, Plaintiffs' mortgage loan was transferred from Defendant Cenlar to Defendant LoanCare.

27. On or around January 9, 2023, Plaintiffs, through counsel, mailed a QWR via certified mail to Defendant Cenlar pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36 to request information regarding their loan.

28. Plaintiffs' QWR was mailed with a signed authorization to furnish and release information to their counsel, as permitted in 12 U.S.C. § 2605(e)(1)(A).

29. In this QWR, Plaintiffs included their name, home address, loan number, and a statement disputing the validity of their debt, requesting several documents including "[a] copy of any and all recordings…[and a] copy of any and all transcripts of conversations with [Plaintiffs] or any other person concerning [Plaintiffs'] account."

30. The QWR was both a Notice of Error and a Request for Information pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and 12 C.F.R. §§ 1024.35, 1024.36, because Plaintiff disputed the validity of the debt she allegedly owed and because they requested information regarding the servicing of their loan.

31. The QWR was received by Defendant Cenlar on January 17, 2023.

32. Defendant Cenlar did not provide a written response acknowledging receipt of Plaintiff's correspondence within five (5) days, as required by 12 U.S.C. § 2605(e)(1)(A).

33. Plaintiffs' counsel received a letter from Defendant LoanCare dated February 1, 2023, in which Defendant LoanCare indicated that Plaintiffs' firm was "added as an authorized third party" and provided some documentation and information regarding the account history, monthly statements, Deed of Trust and Note, etc. However, Defendant failed to provide any of the requested audio recordings or transcripts of said recordings.

34. Upon information and belief, Defendant LoanCare failed to provide complete documentation in its possession that was response to Plaintiffs' QWR.

35. In Defendant LoanCare's response, Defendant LoanCare indicated that several of Plaintiffs' requests were "considered confidential and proprietary," and "unduly burdensome."

36. Due to Defendant LoanCare's failure to provide the requested recordings, Plaintiffs, through Plaintiffs' counsel, sent a follow-up letter to Defendant LoanCare via certified mail on May 24, 2023.

37. In the follow-up letter, Plaintiffs' counsel again requested that Defendant LoanCare provide the audio recordings, which the CFPB's commentary to Regulation X specifically contemplates as requested information. *See* 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

38. The follow up letter was reasonably sent by Plaintiffs, through counsel, in an effort to obtain Defendants' compliance with RESPA.

39. The follow up letter was received by Defendant LoanCare on June 6, 2023.

40. Plaintiffs' counsel received a letter in response to Plaintiffs' follow up letter from Defendant LoanCare dated June 21, 2023.

41. In Defendant LoanCare's response to the follow up letter, Defendant LoanCare stated, "we have reviewed your concern and determined that no specific error was identified. To assist you, the following documents are enclosed: Account History, Fixed/Adjustable-Rate Note, Mortgage, Assignment of Mortgage, Notices of Servicing Transfer, and Notice of Postponement of Foreclosure Sale."

42. Defendant LoanCare again failed to produce the requested recordings and transcripts.

43. As of the date of the filing of this Complaint, Plaintiffs have not received any other documents or supplemental responses from Defendants relating to the QWR, and Defendant LoanCare has willfully failed to provide any of the requested audio recordings to Plaintiffs.

44. Defendant LoanCare's refusal to provide requested information to borrowers who submit valid QWR's is, upon information and belief, a matter of standard business policy and practice for Defendant.

45. Plaintiffs are informed and believe and hereupon allege that Defendant has refused to produce recordings for possibly hundreds if not thousands of consumers that have requested them.

46. Plaintiffs are informed and believe and hereupon allege that Defendant has the ability to easily produce the requested recordings through reasonable business efforts.

47. Plaintiffs are informed and believe and hereupon allege that Defendant has no proper basis to withhold its audio recordings and transcripts of conversations with Plaintiffs on the basis that are "privileged or proprietary."

48. Defendant's blanket refusal to Plaintiffs appears to be a uniform template response sent to many consumers, which shows a pattern and practice of non-compliance with RESPA.

49. Furthermore, at least two requests were made by Plaintiffs for the recordings in question and Defendant failed to produce the recordings in response to each request which further illustrates its pattern and practice of non-compliance.

50. Defendants' failure to produce the audio recordings inhibits Plaintiffs' effort to remedy issues with their mortgage.

## Choice of Law

51. The State of Massachusetts has sufficient interest in the conduct at issue in this complaint, such that Massachusetts law may be uniformly applied to the claims of the proposed Class.

52. Defendant does substantial business in Massachusetts, and a significant portion of the proposed Class are located in Massachusetts. Moreover, Defendant avails itself to these Massachusetts citizens by soliciting directly to them.

53. The State of Massachusetts also has the greatest interest in applying its law to Class members' claims. Massachusetts' governmental interest include protecting resident consumers against unfair or deceptive acts or practices. *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,* 640 N.E.2d 1101, 1104 (Mass. 1994).

54. If other states' laws were applied to Class members' claims, Massachusetts' interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired.

55. Massachusetts could not effectively regulate companies like Defendant, which does business throughout the United States, if it can only ensure remuneration for consumers from one of the 50 states affected by conduct that runs afoul of its laws.

## Class Action Allegations

56. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated (the "Class"), pursuant to Federal Rule Civil Procedure 23(b)(1),(b)(2) and/or (b)(3).

57. The putative Class that Plaintiffs seek to represent is composed of:

> All persons within the United States who have or have had a mortgage loan with Defendants and who within three years from the filing of this Complaint have requested copies of audio recordings or transcripts of phone calls between themselves and Defendants pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12. C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings by Defendants.

58. Excluded from the Class are any of Defendant's officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which Defendant has a controlling interest. Judicial officers presiding over this case, its staff, and immediate family members, are also excluded from the Class.

59. Plaintiffs do not know the number of members in the Class but believe the Class members number in the several thousands, if not more. Such information can be ascertained through Discovery from records maintained by Defendant. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

60. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiffs' claims are typical of the members of the Class, and Plaintiffs' can fairly and adequately represent the interests of the Class.

61. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    a. Whether Defendant failed to provide audio recordings of telephone calls between Defendant and Class members as required under RESPA;

9

    b. Whether Defendant failed to conduct a "reasonable investigation" as required pursuant to 12 C.F.R. § 1024.35(d)(1)(i) – (ii);

    c. Whether Plaintiffs and the Class are entitled to damages under 12 U.S.C § 2605(f);

    d. Whether Defendant demonstrates a "pattern or practice" of failing to respond to borrowers' QWRs and RFIs;

    e. Whether Defendant's conduct violates 12 U.S.C. § 2601 *et. seq.*; and

    f. Whether Plaintiffs and the putative Class members are entitled to injunctive relief as sought herein

62. Plaintiffs' claims are typical of those of the other Class members because Plaintiffs, like every other Class member, requests audio recordings or transcripts of telephone calls between Plaintiffs and Defendant, and Defendant refused to provide them.

63. Plaintiffs will fairly and adequately protect the interests of the Class and Subclass. Moreover, Plaintiffs have no interest that is contrary to or in conflict with those of the Class they seek to represent during the Class Period.

64. In addition, Plaintiffs have retained competent counsel experienced in Class action litigation to further ensure such protection and intend to prosecute this action vigorously.

65. The prosecution of separate actions by individual members of the Class and would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant in the State of Massachusetts and would lead to repetitious trials of the numerous common questions of fact and law in the State of Massachusetts. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that

would preclude its maintenance as a Class action. As a result, a Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

66. Proper and sufficient notice of this action may be provided to the Class members through direct mail and email.

67. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of Class treatment Defendant's violations of law inflicting substantial damages in the aggregate would not be remedied without certification of the Class.

68. Absent certification of this action as a Class action, Plaintiffs and the members of the Class will continue to be damaged by Defendant's refusal to comply with RESPA.

## First Cause of Action

## Violations of The Real Estate Settlement Procedures Act,

## 12 U.S.C. § 2601 et. seq.

69. Plaintiffs re-allege and incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

70. Plaintiffs' loans with Defendant were at all times relevant a "federally related mortgage loan" as defined by 12 § U.S.C. 2602(1).

71. Defendant is, and was at all times, a loan "servicer" as defined by 12 § C.F.R. § 1024.3.

72. Each plaintiff and Defendant are "persons" as defined by 12 U.S.C. § 2602(5).

73. A failure to follow regulations promulgated by the CFPB in Regulation X is per se a violation of RESPA. 12 U.S.C. § 2605(k).

74. Plaintiffs' request for audio recordings was both a QWR pursuant to 12 U.S.C. § 2605(e)(1)(A) and an RFI pursuant 12 C.F.R. § 1024.36.

75. Audio recordings and transcripts of phone calls with borrowers are information "available in the regular course of business" to Defendant. See 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

76. Defendant failed to provide Plaintiffs with requested information available to Defendant in the ordinary course of business. Consequently, Defendant violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k) and 12 C.F.R. § 1024.36.

77. Defendant further violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36 by failing to adequately investigate and respond to Plaintiffs' requests.

78. Plaintiffs are informed and believe that at least 40 other similarly-situated borrowers who have requested audio recordings or transcripts of telephone calls between themselves and Defendant only to be likewise denied access to that information by Defendant. This is sufficient to demonstrate a "pattern or practice" under RESPA. As such, Defendant is liable for statutory damages in the amount of up to $2,000 per violation pursuant to 12 U.S.C § 2605(f)

**Prayer For Relief**

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiffs the following relief against Defendant:

- That the Court determine this action may be maintained as a Class Action by certifying this case as a Class Action as to the Class;
- That the Court appoint Plaintiffs to serve as the Class Representatives in this matter and appoint Plaintiffs' Counsel as Class Counsel;
- That Defendant's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein; and
- That Plaintiffs and the Class be awarded injunctive relief prohibiting such conduct in the future.

- Injunctive relief prohibiting such conduct in the future.
- Injunctive relief ordering Defendant to release audio recordings and transcripts of telephone calls to Plaintiff sand Class members.
- Statutory damages in an amount of $2,000 per violation to each of the named Plaintiffs individually and to each member of the Class pursuant to 12 U.S.C § 2605(f)
- An award of actual damages according to proof per violation to each of the named Plaintiffs individually and to each member of the Class pursuant to 12 U.S.C. § 2605 (f).
- Attorneys' fees and costs
- Any and all further relief that this Court deems just and proper.

**Trial By Jury**

79.     Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demands, a trial by jury.

Date: December 19, 2023                              Respectfully submitted,

                                                                    By: */s/ Matthew McKenna*
                                                                            Matthew McKenna